# STATE OF MICHIGAN

# COURT OF APPEALS

CHRISTIE DERUITER,

        Plaintiff/Counter-Defendant-
Appellee,

v

TOWNSHIP OF BYRON,

        Defendant/Counter-Plaintiff-
Appellant,

and

MICHIGAN TOWNSHIPS ASSOCIATION and
MICHIGAN MUNICIPAL LEAGUE,

        Amici Curiae.

FOR PUBLICATION
July 17, 2018
9:05 a.m.

No. 338972
Kent Circuit Court
LC No. 16-004195-CZ

Before: HOEKSTRA, P.J., and MURPHY and MARKEY, JJ.

PER CURIAM.

Defendant appeals by right the trial court's order granting plaintiff summary disposition and declaring that defendant's ordinance conflicted with the provisions of the Michigan Medical Marihuana Act, MCL 333.26421 *et seq*. (MMMA); therefore, it was preempted. We affirm.

Defendant adopted its zoning ordinance regulations for land development and use under the Michigan Zoning Enabling Act, MCL 125.3101 *et seq*. (MZEA). Use of property by a medical marijuana registered caregiver was permitted only under Byron Township Zoning Ordinance (Zoning Ordinance) §§ 3.2.G and H as a "home occupation." Defendant prohibited registered caregivers from the medical use of marijuana in a commercial property. Zoning Ordinance § 3.2.H.3, required medical marijuana caregivers to submit an application and pay a fee to obtain a township permit before engaging in any medical use of marijuana. Violation of the provisions of the ordinance could result in revocation of the permit, which would require the caregiver to cease all medical marijuana activity until defendant granted a new permit.

Plaintiff, a registered qualified medical marijuana patient and a registered primary caregiver to qualifying patients grew medical marijuana in an enclosed, locked facility at a

commercial location within the township. On March 22, 2016, the township supervisor sent plaintiff a letter advising that plaintiff's medical marijuana related activities constituted a zoning violation. He ordered plaintiff to cease and desist all medical marijuana activities under threat of an enforcement action by defendant. Not long after, plaintiff sued defendant for declaratory and injunctive relief on the ground that defendant threatened her exercise of her rights and privileges under the MMMA despite her compliance with the MMMA. Plaintiff alleged that defendant's ordinance prohibited what the MMMA permitted. Consequently, it directly conflicted with the MMMA and required that the trial court hold that the MMMA preempted the ordinance.

Defendant countersued for enforcement of its ordinance and abatement of the nuisance. Defendant sought a declaratory judgment that its ordinance did not conflict with the MMMA.

The parties each moved for summary disposition. Both parties asserted that the dispositive issue was whether the MMMA preempted defendant's home occupation ordinance. Plaintiff argued that the ordinance directly conflicted with the MMMA. Defendant asserted that preemption did not apply because its ordinance only restricted the location where MMMA compliant activities could occur and did not prohibit them altogether. The trial court held that the ordinance directly conflicted with the MMMA, so the MMMA preempted the ordinance. Defendant now appeals.

"Whether a state statute preempts a local ordinance is a question of statutory interpretation and, therefore, a question of law that we review de novo." *Ter Beek v City of Wyoming*, 297 Mich App 446, 452; 823 NW2d 864 (2012) (*Ter Beek I*), aff'd 495 Mich 1; 846 NW2d 531 (2014) (*Ter Beek II*). We also review de novo the trial court's decision to grant or deny a motion for summary disposition in an action for a declaratory judgment. *Lansing Schools Ed Ass'n v Lansing Bd of Ed (On Remand)*, 293 Mich App 506, 512-513; 810 NW2d 95 (2011). We review for clear error any of the trial court's factual findings and review de novo the trial court's interpretation of the MMMA. *State v McQueen*, 293 Mich App 644, 653; 811 NW2d 513 (2011).

Defendant argues that the trial court erred by holding that the MMMA preempted its home occupation ordinance because it merely regulated land use by restricting the location of medical use of marijuana while allowing patients and caregivers to fully exercise their rights and privileges. We disagree.

"Under Const 1963, art 7, § 22, a Michigan municipality's power to adopt resolutions and ordinances relating to municipal concerns is 'subject to the constitution and law.'" *People v Llewellyn*, 401 Mich 314, 321; 257 NW2d 902 (1977). "Michigan is strongly committed to the concept of home rule, and constitutional and statutory provisions which grant power to municipalities are to be liberally construed." *Bivens v Grand Rapids*, 443 Mich 391, 400; 505 NW2d 239 (1993). Local governments may control and regulate matters of local concern so long as their regulations do not conflict with state law. *City of Taylor v Detroit Edison Co*, 475 Mich 109, 117-118; 715 NW2d 28 (2006).

The MZEA provides in relevant part:

A local unit of government may provide by zoning ordinance for the regulation of land development and . . . regulate the use of land and structures . . . to ensure that use of the land is situated in appropriate locations and . . . to promote public health, safety, and welfare. [MCL 125.3201(1).]

This Court explained in *Ter Beek I*, 297 Mich App at 453, that

[a] city ordinance that purports to prohibit what a state statute permits is void. A state statute preempts regulation by an inferior government when the local regulation directly conflicts with the statute or when the statute completely occupies the regulatory field. A direct conflict exists between a local regulation and state statute when the local regulation prohibits what the statute permits. [Quotation marks and citations omitted.]

The MMMA, an initiative law, governs medical marijuana use. "The words of an initiative law are given their ordinary and customary meaning as would have been understood by the voters." *McQueen*, 293 Mich App at 653. This Court presumes that the electorate intended the meaning plainly expressed in the statute. *Id*.

Under MCL 333.26427(a), the "medical use of marijuana is allowed under state law to the extent that it is carried out in accordance with the provisions of this act." MCL 333.26423(f) defined the term "medical use" as follows:

[T]he acquisition, possession, cultivation, manufacture, extraction, use, internal possession, delivery, transfer, or transportation of marihuana, or paraphernalia relating to the administration of marihuana to treat or alleviate a registered qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition.

The MMMA provides immunity from arrest, prosecution, and penalty in any manner, and prohibits the denial of any right or privilege to qualifying medical marijuana patients and registered primary caregivers. See MCL 333.26424(a) and (b); *People v Hartwick*, 498 Mich 192, 210-221; 870 NW2d 37 (2015). MCL 333.26424(b)(2)'s immunity grants caregivers the right to possess 2.5 ounces of usable marijuana for each qualifying patient and cultivate and keep 12 marijuana plants for each qualifying patient in an enclosed, locked facility. MCL 333.26423(d) in relevant part defines an "enclosed, locked facility" as "a closet, room, or other comparable, stationary, and fully enclosed area equipped with secured locks or other functioning security devices that permit access only by a registered primary caregiver or registered qualifying patient."

MCL 333.26424(b)(2) and MCL 333.26423(d) are in *pari materia* and must be read together as one law because they are different provisions of a statute that relate to the same subject matter. *Ter Beek I*, 297 Mich App at 462. Under MCL 333.26424(e), a rebuttable presumption exists that primary caregivers and their qualified patients are engaged in the medical use of marijuana in accordance with the MMMA if they possess registry identification cards and possess an amount of medical marijuana that does not exceed the MMMA's permissible limits. Under MCL 333.26427(a), primary caregivers and their qualified patients are permitted the

medical use of marijuana to the extent their use complies with the MMMA. The MMMA prohibits engagement in the medical use of marijuana in specified locations listed in MCL 333.26427(b), such as on school grounds, in school buses, or forms of public transportation, as well as in correctional facilities or public places.

The MMMA also provides that "[a]ll other acts . . . inconsistent with this act do not apply to the medical use of marihuana as provided for by this act." MCL 333.26427(e). Therefore, if another law is inconsistent with the MMMA such that it punishes MMMA-compliant medical use of marijuana the MMMA controls, and the person is immune from punishment. *People v Koon*, 494 Mich 1, 7, 832 NW2d 724 (2013).

This Court has noted that if the MMMA's "statutory language is unambiguous, . . . [n]o further judicial construction is required or permitted because we must conclude that the electors intended the meaning clearly expressed." *People v Bylsma*, 315 Mich App 363, 377-378; 889 NW2d 729 (2016) (citation and quotation marks omitted). "Judicial construction of a statute is only permitted when statutory language is ambiguous," which occurs "only if it creates an irreconcilable conflict with another provision or it is equally susceptible to more than one meaning." *Noll v Ritzer (On Remand)*, 317 Mich App 506, 511; 895 NW2d 192 (2016). If the language is clear and unambiguous, the plain meaning of the statute reflects the legislative intent and judicial construction is not permitted. *Univ'l Underwriters Ins Group v Auto Club Ins Ass'n*, 256 Mich App 541, 544; 666 NW2d 294 (2003).

Consequently, a court "may not speculate regarding legislative intent beyond the words expressed in a statute. Hence, nothing may be read into a statute that is not within the manifest intent of the Legislature as derived from the act itself." *Detroit Pub Schs v Conn*, 308 Mich App 234, 248; 863 NW2d 373 (2014) (quotation marks and citations omitted). Courts may not infer legislative intent from the absence of action by the Legislature. *McCahan v Brennan*, 492 Mich 730, 749; 822 NW2d 747 (2012). A "legislature legislates by legislating, not by doing nothing, not by keeping silent." *Id*. (quotation marks and citation omitted). Rather, correct interpretation of a statute like the MMMA requires (1) reading it as a whole, (2) reading the statute's words and phrases in the context of the entire legislative scheme, (3) considering both the plain meaning of the critical words and phrases along with their placement and purpose within the statutory scheme, and (4) interpreting the statutory provisions in harmony with the entire statutory scheme. See *Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009).

MCL 333.26423(d) essentially provides that caregivers may operate medical marijuana activities so long as they comply with the enclosed, locked facility requirements. MCL 333.26424(b)(2) and MCL 333.26423(d), when read together, grant registered caregivers the rights and privileges to grow medical marijuana without fear of penalties imposed by local governments. In *Ter Beek II*, 495 Mich at 20, the Michigan Supreme Court ruled that an ordinance "directly conflicts with the MMMA by permitting what the MMMA expressly prohibits—the imposition of a 'penalty in any manner' on a registered qualifying patient whose medical use of marijuana falls within the scope of [MCL 333.26424(b)]'s immunity." Further, the Michigan Supreme Court clarified in *Ter Beek II*, 495 Mich at 21, that its holding in

*McQueen II*[1] should not be read to authorize a municipality to enjoin a registered qualifying patient from engaging in medical use of marijuana that complied with the MMMA simply by characterizing the conduct as a zoning violation.

The Michigan Supreme Court stated that MCL 333.26427(a) "in no uncertain terms" provides for medical use of marijuana if such use complies with the MMMA and that no other law may interfere with the unambiguous rights conferred by the MMMA. *Id*. at 22. Although the Michigan Supreme Court reaffirmed that the MMMA did not create a general right for individuals to grow and distribute medical marijuana, nevertheless, it held that the MMMA preempted the city's ordinance because it penalized the plaintiff for engaging in MMMA-compliant medical marijuana use. *Id*. at 24-25.

Recently, in *York Charter Twp v Miller*, __ Mich App __, __; __NW2d __ (Docket No. 335344) (2018); slip op at 8, this Court explained:

> Notably, the MMMA does not grant municipalities authority to adopt ordinances that restrict registered caregivers' rights and privileges under the MMMA. By comparison, the Legislature recently enacted the medical marijuana facilities licensing act, MCL 333.27101 *et seq*., and specifically granted municipalities authority to adopt local ordinances including zoning regulations that restrict the location, number, and type of facilities within its boundaries. See MCL 333.27205. Obviously, had the Legislature intended to authorize municipalities to adopt ordinances restricting registered medical marijuana caregivers through zoning ordinances, it could have done so in the MMMA. Despite amending the MMMA twice, the Legislature refrained from incorporating such provision in the MMMA.

We believe that the plain language of the MMMA lacks any ambiguity that would necessitate judicial construction to decipher its meaning. When the statute is read as a whole, no irreconcilable conflict results that makes the statutory provisions susceptible to more than one meaning. We conclude that the MMMA permits medical use of marijuana, particularly the cultivation of marijuana by registered caregivers, at locations regardless of land use zoning designations as long as the activity occurs within the statutorily specified enclosed, locked facility. No provision in the MMMA authorizes municipalities to restrict the location of MMMA-compliant medical use of marijuana by caregivers. Neither does the MMMA authorize municipalities to adopt ordinances restricting MMMA-compliant conduct to home occupations in residential locations. So long as caregivers conduct their medical marijuana activities in compliance with the MMMA and cultivate medical marijuana in an "enclosed, locked facility" as defined by MCL 333.26423(d) and do not violate MCL 333.26427(b)'s location prohibitions, such conduct complies with the MMMA and cannot be restricted or penalized.

In this case, defendant's zoning ordinance §§ 3.2.G and H improperly restricted the medical use of marijuana by permitting MMMA-compliant activities only as a home occupation

---

[1] *State v McQueen*, 493 Mich 135; 828 NW2d 644 (2013).

within a dwelling or garage in residential zoned areas within the township. Medical marijuana home occupations were expressly prohibited in a commercial setting regardless of whether a patient's or caregiver's medical use of marijuana fully complied with the MMMA. Section 3.2.H.3 also required caregivers to obtain a permit by filing an application and paying a fee, and such permits were revocable for noncompliance with the ordinance regardless of whether a patient's or caregiver's medical use of marijuana fully complied with the MMMA. Sections 3.2.G and H plainly prohibited caregivers from conducting noncommercial medical marijuana activities at nonresidential locations. Defendant's zoning ordinance § 14.11 imposed serious consequences including fines and penalties for noncompliance.

We conclude that defendant's home occupation ordinance, §§ 3.2.G and H, plainly purported to prohibit the exercise of rights and privileges that the MMMA otherwise permits. Defendant's prohibition against noncommercial medical use of marijuana by a caregiver within a commercial building effectively denied plaintiff, as a registered caregiver, the rights and privileges that MCL 333.26424(b) permits in conjunction with MCL 333.26423(d). Accordingly, under *Ter Beek I*, 297 Mich App at 453, defendant's home occupation ordinance directly conflicted with the MMMA in that regard.

Further, enforcement of defendant's home occupation ordinance would result in the imposition of sanctions against plaintiff that the MMMA does not permit. See MCL 333.26424(b); see also *Ter Beek I*, 297 Mich App at 455-456. As the Michigan Supreme Court has explained, "local zoning regulation enacted pursuant to the MZEA does not save it from preemption." *Ter Beek II*, 495 Mich 21-22. Therefore, defendant's zoning ordinance's prohibition of registered caregivers' MMMA-compliant medical use of marijuana in a commercial building was void and preempted by the MMMA. *Ter Beek I*, 297 Mich App at 457.

We believe that the trial court correctly read the MMMA as a whole, analyzed its plain language, and interpreted the MMMA in a reasonable and harmonious manner. The trial court correctly ruled that defendant's home occupation ordinance prohibited what the MMMA permitted, MMMA-compliant conduct, merely because it occurred in a commercially zoned location. The trial court also correctly decided that defendant's zoning ordinance permitted what the MMMA prohibited by targeting and restricting MMMA-compliant use by adding a layer of restrictions and regulations that interfered with lawful use by imposing a permit requirement that defendant could revoke without regard to plaintiff's MMMA-compliant conduct. Further, the trial court correctly ruled that defendant's zoning ordinance also permitted what the MMMA prohibited by allowing defendant to impose penalties regardless of plaintiff's MMMA-compliant conduct. Accordingly, the trial court did not err by ruling that a direct conflict existed between defendant's ordinance and the MMMA resulting in the MMMA's preemption of plaintiff's home occupation ordinance.

Defendant's argument that the MMMA does not preempt its ordinance because the MMMA does not occupy the field of zoning fails; the trial court never based its ruling upon field preemption of zoning nor did the trial court need to consider the field preemption doctrine. Rather, the trial court correctly determined that doctrine inapplicable to this case because the ordinance directly conflicted with the MMMA and was preempted for that reason alone. Moreover, as this Court explained in *Miller*, __ Mich App at __ ; slip op at 8, had the Legislature intended to authorize municipalities to adopt ordinances restricting the location where registered

medical marijuana caregivers may exercise their rights through zoning ordinances, it could have done so in the MMMA but has refrained from doing so.

Therefore, we hold that the trial court properly analyzed the interplay between defendant's zoning ordinance and the MMMA and correctly held as a matter of law that the MMMA preempted defendant's home occupation zoning ordinance because the ordinance directly conflicted with the MMMA by prohibiting what the MMMA permitted, and it improperly imposed regulations and penalties upon persons who engage in MMMA-compliant medical use of marijuana.

We affirm.

/s/ Joel P. Hoekstra
/s/ William B. Murphy
/s/ Jane E. Markey